Nathan P. Eimer (*Pro Hac Vice*)
Email: neimer@eimerstahl.com
Vanessa G. Jacobsen (*Pro Hac Vice*)
Email: vjacobsen@eimerstahl.com
Jacob Hamann (*Pro Hac Vice*)
Email: jhamann@eimerstahl.com
Brian Y. Chang (SBN 287757)
Email: bchang@eimerstahl.com
Jungmin Lee (*Pro Hac Vice*)
Email: jlee@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

Additional attorneys listed on signature page

*Attorneys for Defendants SK hynix Inc. and SK hynix America Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| MICHELE JONES, DAVID LAIETTA, KIMBERLY YORK, BENJAMIN MURRAY, WANDA DUREYA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG SEMICONDUCTOR, INC., SK HYNIX, INC. (F/K/A HYNIX SEMICONDUCTOR, INC.), SK HYNIX AMERICA, INC. (F/K/A HYNIX SEMICONDUCTOR AMERICA, INC.),<br><br>Defendants. | Case No.: 4:18-cv-02518-JSW<br><br>**CORRECTED REPLY IN SUPPORT OF SK HYNIX INC. AND SK HYNIX AMERICA INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date: To Be Determined<br>Time: 9:00 am<br>Place: Courtroom 5 - 2nd Floor<br>Judge: Hon. Jeffrey S. White |

The core of Plaintiffs' alleged conspiracy is that the Defendants publicly committed to grow their supply below the rate of demand growth. *See* Compl. ¶ 7. Fatal to Plaintiffs' allegations against SK hynix Inc. ("SK hynix Korea") and SK hynix America Inc. ("SK hynix America") (collectively, "SK hynix"), however, is that the only relevant facts alleged against either company are that representatives from SK hynix Korea stated exactly the opposite on five occasions—***that the company would increase its supply of DRAM to meet rising demand***. In opposition, Plaintiffs resort to misleading the court about the meaning of the phrase "in line with the market" used in some of those statements by falsely claiming that SK hynix projected growth in line with its *competitors* instead of *market demand*.[1] This is just not true.[2] Plaintiffs' own allegations refute their opposition to SK hynix's Rule 12(b)(6) motion.

A.   **Plaintiffs Alleged No Facts Showing SK hynix Joined a Conspiracy**

Plaintiffs' Opposition to SK hynix's Motion to Dismiss ("Opp.") feebly attempts to characterize the chasm between SK hynix's public statements and those of its competitors as a "distinction in exact verbiage." Opp. at 2. But SK hynix's public statements were not merely "distinct" from those of its competitors; they completely contradict every aspect of the supposed conspiracy. Specifically, SK hynix never projected that its supply growth would be below the rate of demand growth. SK hynix never stated that it was restricting supply growth or wafer capacity. And SK hynix never stated that it would refrain from taking market share. In fact, SK hynix representatives said the precise opposite.

The Complaint alleges a conspiracy among SK hynix, Samsung and Micron to restrict supply growth to 15-20% while demand grew at 20-25%. *See* Compl. ¶¶ 7, 79, 99, 103-105, 111, 113, 115-16, 119, 121-22. But SK hynix did no such thing. To the contrary, the handful of

---

[1] *See, e.g.*, Opp. at 4 ("[SK hynix stated] it would grow supply in line with its competitors (*but not increase supply to meet market demand growth*) . . . .") (emphasis in original).

[2] The term "market," as used by SK hynix, refers to the *buyers* of DRAM, not the manufacturers. In other words, market means *demand*. This is obvious from the allegations and earnings call transcripts. *See, e.g.*, Decl. of Jacob Hamann in Support of SK hynix Inc. and SK hynix America Inc.'s Request for Jud. Notice of Earnings Calls and Fin. Supervisory Serv. Filings [ECF No. 51-1] ("Decl."), Ex. D at 4, 5 (projecting demand growth at "mid-20% level" and SK hynix's bit shipment growth "in the mid-20% level, on par with the market"); Decl., Ex. E at 4, 5 (projecting demand growth at "20% level" and SK hynix's growth at "around 20%, on par with market growth").

allegations against SK hynix themselves show that SK hynix always projected that its bit growth would match demand growth, which was between 20-25%. *See* Compl. ¶¶ 97, 107, 112, 120, 125.[3]

To avoid the obvious fact that SK hynix's public statements directly contradict the allegations regarding the supposed conspiracy, Plaintiffs try to mislead by asserting that SK hynix conspired to "ke[ep] supply growth in line with the market" but below the rate of demand. Opp. at 1. Plaintiffs' argument is self-contradicting. Growing supply "in-line with the market" means growing supply at the same rate as demand. In other words, SK hynix is alleged to have stated its supply growth would be *even with* the expected 20-25% rate of market demand growth, *see, e.g.*, Compl. ¶ 97 (projecting bit growth "in the low to mid 20 percent range, in line with market growth"), while the alleged conspiracy was to limit supply growth to 15-20%, below market growth. *Id.* ¶ 7.

Plaintiffs engage in the same misleading tactic regarding wafer capacity. Contrary to Plaintiffs' representation in the opposition brief, SK hynix representatives never "confirm[ed]" that the company was "restricting" capacity or supply growth. Opp. at 1. Instead, SK hynix executives explicitly, unambiguously and publicly stated during the claimed conspiracy period that SK hynix was *increasing* wafer capacity, including by speeding up construction of a massive new production facility in Wuxi, China. *See* SK hynix Mot. at 8-9.

Plaintiffs try to minimize the importance of the Wuxi construction, but Wuxi is critical to the plausibility of the alleged conspiracy. The construction shows that, at the same moment that SK hynix was allegedly signaling to competitors its agreement to refrain from adding capacity, SK hynix representatives were actually announcing their intention to add capacity at a large scale specifically to meet increasing demand. *See, e.g.*, Decl., Ex. D. at 7; Decl., Ex. E at 9. This is flatly inconsistent with the alleged conspiracy. Moreover, it is ridiculous to dismiss the Wuxi expansion as a "non-sequitur" just because construction would not be completed until after the alleged

---

[3] Unlike *In re Domestic Airline Antitrust Litig.*, 221 F. Supp. 3d 46 (D.D.C. 2016), there are no factual allegations here that SK hynix ever made detailed statements about the industry that mirrored its competitors or that it abruptly changed its conduct as Southwest Airlines had done by beginning to monitor competitors' airfare. The *only* factual allegations against SK hynix are vague statements about its own planned course of conduct. *See id.* at 62-63 (noting that the "mere announcement of Defendant's own planned course of conduct" would not support a claim). Even those statements, presented honestly, expressly contradict the supposed conspiracy at every point.

conspiracy supposedly ended. In Plaintiffs' imaginary world, SK hynix apparently knew when the alleged conspiracy would end (somehow predicting when the Chinese government would initiate its investigation years in advance) and timed the completion of the Wuxi expansion so it would not interfere with the conspiracy. What is further inexplicable is that, in actuality, SK hynix announced during the conspiracy period that it was *accelerating* the completion of the Wuxi expansion to get more product into the market faster. *See* Decl., Ex. C at 7-8; Decl., Ex. E at 9.

Finally, Plaintiffs claim that SK hynix signaled that it would refrain from taking market share. Again, SK hynix said the exact opposite. An SK hynix representative publicly affirmed the company's commitment to increasing market share during the alleged conspiracy period, stating that SK hynix intended to "*increase market share* while putting [its] priority on profitability." Decl., Ex. A at 6 (emphasis added). This is further borne out by the fact that, as Plaintiffs themselves allege, Samsung lost market share during the alleged conspiracy. *See* Compl. ¶ 127. The supposed agreement to maintain market share is another fiction.

## B.     Plaintiffs Misrepresent the Content of the Earnings Calls

To pad out the thin allegations against SK hynix, Plaintiffs blatantly misrepresent the content of the earnings calls upon which the Complaint relies.[4] For instance, Plaintiffs claim that on the January 25, 2017, earnings call, SK hynix stated that it would not increase supply to meet demand. Opp. at 4. The transcript, however, shows SK hynix stated the opposite: "we intend to meet the demand even if that means we have to be very tight with our inventory." Decl. of Jacob M. Hamann in Support of SK hynix Inc. and SK hynix America Inc.'s Request for Jud. Notice of Earnings Call Transcript, Ex. I at 9. Likewise, Plaintiffs claim that, in April 2017, SK hynix

---

[4] The incorporation-by-reference doctrine squarely applies to the earnings call transcripts (Decl., Exs. A-F, I) because this is precisely a situation where "plaintiffs . . . select[ed] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quotations omitted). The sole basis for Plaintiffs' claims against SK hynix are statements in earnings calls that Plaintiffs have mischaracterized or selected out of context. The Court may also take judicial notice of SK hynix's statements to regulators (Decl., Exs. G-H) because SK hynix is citing these documents for undisputed facts that "'can be accurately and readily determined from' the [documents]." *Khoja*, 899 F.3d at 1000 (*quoting* Fed. R. Evid. 201(b)(2)). Namely, the cited documents show that SK hynix reported in December 2016 that it planned to invest in the Wuxi fab and reported in July 2017 that it planned to increase investment in overseas production facilities. These bare facts are, like dates, "not subject to reasonable dispute." *Id.*

"possessed the capacity to grow supply faster than it was choosing." Opp. at 5. There is simply no basis for this claim. In the referenced portion of the call, an SK hynix representative stated that the company was projecting 20% growth but might grow faster if "yield is much more improved than we had initially expected or if the technology migration t[ook] place at a faster pace than expected." Decl., Ex. B. at 9-10. In other words, SK hynix provided a realistic projection of its supply growth, while acknowledging that a more optimistic outcome was possible. It never stated that it was "choosing" 20% growth.

Plaintiffs also claim that SK hynix "confirmed to its co-conspirators" that "it would not ramp up wafer capacity" to satisfy demand on its October 2017 call. Opp. at 5. This not only misrepresents the statement made during the call but also misrepresents the allegation in the Complaint, which actually alleges SK hynix stated it "would not *be able to quickly* ramp up wafer capacity." Compl. ¶ 125 (emphasis added). Neither, however, is accurate. In the quoted section, the SK hynix representative merely noted the difficulty of increasing capacity by using existing cleanroom  space (which was minimal) or technology migrations (which had diminishing returns), a difficulty that had driven SK hynix to embark on its multi-billion dollar expansion of Wuxi, doubling its capacity to meet demand. *See* Decl., Ex. D at 4, 7.

C.     **Statements by Micron Employees Are Not Attributable to SK hynix**

Given that SK hynix's own statements do not come close to establishing its participation in a conspiracy, Plaintiffs attempt to argue that statements made by Micron executives can somehow be attributed to SK hynix.  But Micron executives' statements are their own and are based on their own perception of the market and Micron's interests. Micron executives do not and cannot speak for SK hynix, and any alleged statements about "the industry" cannot be imputed to SK hynix to manufacture liability. *See In re Mushroom Direct Purchaser Antitrust Litig.,* 621 F. Supp. 2d 274, 287 (E.D. Pa. 2009) ("[u]nilateral action simply does not support liability [for conspiracy]"); *accord Gressett v. Contra Costa Cty.*, No. C-12-3798 EMC, 2013 WL 2156278, at *6 (N.D. Cal. May 17, 2013). Moreover, SK hynix expressly contradicted these statements. Thus, whereas Plaintiffs claim that Micron said each defendant was maintaining 15-20% supply growth, Opp. at 6, SK hynix reported that it was growing supply at 20-25%. *See, e.g.*, Compl. ¶¶ 97, 112, 120. Plaintiffs claim

that Micron spoke, in September 2017, of an "industry consensus" to keep wafer capacity flat and to invest in technology transitions instead of new cleanroom space, *see* Opp. at 6, but SK hynix already stated that it 1) couldn't meet demand through technology transitions alone, 2) was increasing wafer capacity during 2017, and 3) was accelerating construction of the Wuxi plant for completion in 2018 to add even more cleanroom space. Decl., Ex. C at 7.

Plaintiffs reluctantly acknowledge that SK hynix added wafer capacity during the conspiracy period, but argue that this was consistent with Micron's supposed strategy of growing supply through technology transitions, instead of adding wafer capacity, to keep bit growth at 15-20%. Opp. at 8. If there is a "non-sequitur" anywhere, it is here. SK hynix explicitly rejected Micron's supposed strategy. SK hynix always projected bit growth in the 20-25% range and stated repeatedly that it was adding wafer capacity because it could not grow supply quickly enough through technology transitions. *See, e.g.*, Decl., Ex. C at 7 ("[W]e cannot meet the growing market demand only with technology migration, so we do need some capacity increase."). Micron employees' inaccurate speculation cannot support a claim against SK hynix.

### D    Plaintiffs Failed to Allege Parallel Conduct

Plaintiffs acknowledge that they are relying on parallel conduct and plus-factors to support their claims. Opp. to Joint Motion to Dismiss at 1. Plaintiffs, however, failed to allege parallel conduct.[5] There are *no* factual allegations in the Complaint regarding SK hynix's conduct before the beginning of the alleged conspiracy and thus no basis from which the Court could infer that SK hynix changed its behavior in unison with its competitors. Nor, for that matter, are there any factual allegations establishing that SK hynix changed its conduct after the conspiracy ended. Plaintiffs cite to SK hynix's April 2018 earnings call, but SK hynix provided the *exact same guidance* in the April 2018 call as it did in the calls that Plaintiffs allege show participation in the conspiracy. *See* Decl., Ex. F at 6 (projecting that DRAM shipment growth would be "in line with market growth").

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and this Court should dismiss all claims against SK hynix.

---

[5] For the reasons stated in Defendants' Joint Motion to Dismiss, Plaintiffs have also failed to adequately allege plus-factors.

| | |
|---|---|
| Dated: November 29, 2018 | By: */s/ Nathan P. Eimer* |

EIMER STAHL LLP

Nathan P. Eimer
Email: neimer@eimerstahl.com
Vanessa G. Jacobsen
Email: vjacobsen@eimerstahl.com
Jacob M. Hamann
Email: jhamann@eimerstahl.com
Brian Y. Chang
Email: bchang@eimerstahl.com
Jungmin Lee
Email: jlee@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

WRIGHT, L'ESTRANGE & ERGASTOLO

John H. L'Estrange, Jr. (SBN 049594)
Email: jlestrange@wlelaw.com
Andrew E. Schouten (SBN 263684)
Email: aschouten@wlelaw.com
402 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 231-4844
Fax: (619)231-6710

*Attorneys for Defendants SK hynix Inc. and SK hynix America Inc.*